<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| BENJAMIN JACKSON,<br><br>*Plaintiff*,<br><br>v.<br><br>PATERSON POLICE DEPARTMENT, et al.,<br><br>*Defendants*. | Civil Action No. 24-10215<br><br>**OPINION**<br><br>September 22, 2025 |

**SEMPER**, District Judge.

The current matter comes before the Court on (1) a partial motion to dismiss and (2) a motion to dismiss. The City of Paterson ("Paterson") and the Paterson Police Department (collectively "Municipal Defendants") filed a partial motion to dismiss Plaintiff Benjamin Jackson's First Amended Complaint (ECF 5, "FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF 6, "Mun. Def. Mot.") Paterson Police Officers Malek Assaf, John Rikowich, Yamil Pimienta, Domenic Dicarlo, Muhammed Dombayci, Levis Qirjako, Corey Davis, Brian Culmone, Anthony Castronova, Wisam Salameh, William Hermann, and Elgin Melendez (collectively "Officer Defendants") filed a motion to dismiss Plaintiff's FAC in its entirety pursuant to Rule 12(b)(6). (ECF 12, "Off. Defs. Mot.")

Plaintiff filed a brief opposing Municipal Defendants' partial motion to dismiss. (ECF 17, "Mun. Opp.") Municipal Defendants filed a reply brief in further support of their partial motion. (ECF 18, "Mun. Defs. Reply".) Plaintiff also filed a brief opposing Officer Defendants' motion to dismiss. (ECF 27, "Off. Opp.") Officer Defendants filed a reply brief in further support of their motion. (ECF 31, "Off. Defs. Reply".)

1

The Court reviewed all submissions and decided the motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, Municipal Defendants' partial motion to dismiss is **GRANTED**, and Officer Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

This action stems from an incident involving Plaintiff Benjamin Jackson, an African American male, and Paterson law enforcement on November 6, 2022. (FAC ¶¶ 1-2.) Between 8:00 p.m. and 9:00 p.m., Defendant Police Officers Muhammed Dombayci, John Rikowich, Wisam Salameh, and Corey Davis stopped Plaintiff in Paterson, New Jersey at Broadway and East 18th Streets. (*Id.* ¶ 15.) At the time of the stop, Officers Dombayci, Rikowich, Salameh, and Davis were dressed in plain clothes and wore Body Worn Cameras issued by their employer, the Paterson Police Department. (*Id.* ¶¶ 15-16.) Plaintiff asserts that these officers stopped him due to their suspicions of his "fanny pack" and his "startled" reaction to noticing the officers' unmarked vehicle. (*Id.* ¶¶ 17-21.)

Officers Salameh and Dombayci asked Plaintiff to submit to a search of his person. (FAC ¶ 22.) After asking the basis for stopping him and hearing no explanation from the officers, Plaintiff declined the search. (*Id.* ¶ 23.) Officers Dombayci, Rikowich, Salameh, and Davis insisted on searching Plaintiff, but Plaintiff objected that "New Jersey was not a stop and frisk state" and repeatedly requested that a supervisory officer be summoned to the scene. (*Id.* ¶ 24.) Despite Plaintiff's requests, the officers did not call for a supervisor. (*Id.* ¶ 25.)

---

[1] The Court draws the facts and procedural background from the FAC. The allegations in the Complaint must be accepted as true solely for purposes of these motions, except where conclusory and/or implausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiff asserts that the four officers detained him "involuntarily" and that he placed his hands above his head, against the outside glass window of a business. (*Id.* ¶ 26.) While Plaintiff continued to request that the officers summon a supervisor, the officers informed Plaintiff that he was not under arrest, and Officer Salameh "advised [Plaintiff] that they were going to conduct a Terry Frisk of his person." (*Id.* ¶¶ 26-28.) Officers Dombayci, Rikowich, Salameh, and Davis told Plaintiff that, if he did not comply with their instructions to "put his hands up," they would place him under arrest. (*Id.* ¶ 29.) Plaintiff continued to comply with the officers' instructions and kept his hands above his head against the glass, but the officers placed him under arrest and stated, "all [Plaintiff] was doing was making problems." (*Id.* ¶ 29-30.)

Upon being placed under arrest, Plaintiff informed the arresting officers that "he had stiches in his head from recent brain surgery and that he suffers from seizures[.]" (*Id.* ¶ 31.) After hearing Plaintiff's warning, Officers Dombayci, Rikowich, Salameh, and Davis "violently threw [Plaintiff] to the ground" and repeatedly "brutally kicked him[;] punched him in the face, chest and stomach[;] [and] slammed his face and head into the ground" before placing him in handcuffs. (*Id.* ¶ 32.) While Plaintiff remained handcuffed, Officer Salameh grabbed Plaintiff's scrotum and told Plaintiff "that's for free bro don't even worry about it." (*Id.* ¶ 35.) Plaintiff alleges that the other officers did not stop Officer Salameh from grabbing Plaintiff's genitals but rather were "looking on and laughing[.]" (*Id.* ¶ 36.)

While Plaintiff complained to Officers Dombayci, Rikowich, Salameh, and Davis of pain resulting from Officer Salameh grabbing his scrotum, the four officers "berated" Plaintiff and placed him inside a nearby police car. (*Id.* ¶ 37.) Police Officers Malek Assaf and Domenic Dicarlo were in that police car (*Id.* ¶ 38), and Plaintiff informed Officers Assaf and Dicarlo that he was injured, that the arrest had "aggravate[ed] the wound requiring stitches in his head from recent

brain surgery," and "that he suffered from seizures as a result of brain surgery[.]" (*Id.*) Officers Assaf and Dicarlo did not acknowledge Plaintiff's complaints about his pain and injuries and, with Plaintiff handcuffed in the back seat, drove the car away from the scene of the arrest. (*Id.* ¶ 39.)

While in the police car, Plaintiff experienced a seizure. (*Id.* ¶ 40.) As Plaintiff seized, Officer Assaf stopped the car. (*Id.*) Plaintiff asserts that Officer Assaf did so because he believed that Plaintiff "was deliberately banging his head around in the back seat." (*Id.*) After the seizure, Plaintiff became responsive and "begged" the officers to call for an ambulance for "his injuries, including the severe pain in his scrotum," a request that the officers initially did not grant. (*Id.* ¶¶ 41-42.) Eventually, after "a prolonged period of time," Officers Assaf and Dicarlo called for an ambulance. (*Id.* ¶ 42.)

Before medical personnel arrived to treat Plaintiff's injuries, Defendant Officers Anthony Castronova, Levis Qirjako, and Yamil Pimienta arrived at the scene. (*Id.* ¶ 43.) Officers Assaf, Dicarlo, Castronova, Qirjako, and Pimienta "stood around" while Plaintiff lay on the ground next to the parked vehicle. (*Id.*) Plaintiff informed the newly arrived officers and reminded Officers Assaf and Dicarlo that he suffered from seizures. (*Id.* ¶ 44.) Plaintiff alleges that Officers Assaf and Dicarlo laughed while responding that Plaintiff "was just banging his head around" and "could not be having a seizure" because "he was not foaming at the mouth[.]" (*Id.*) Plaintiff asked Officers Assaf, Dicarlo, Castronova, Qirjako, and Pimienta for water, which they did not provide. (*Id.* ¶ 45.)

Emergency medical personnel arrived at the scene and began to treat Plaintiff for his pain and injuries. (*Id.* ¶ 46.) Plaintiff "told the [e]mergency [m]edical personnel that he had just had a seizure and that one of the [ ] officers grabbed his testicles, and that his testicles hurt[.]" (*Id.*) Plaintiff asked the five officers "which one of them grabbed his testicles, to which one of the [ ]

4

officers replied . . . that it was 'Officer Columbo.'" (*Id.* ¶ 47.) The officers continued to mock Plaintiff and state "that they did not see him foaming at the mouth and that therefore, he could not have been having a seizure[.]" (*Id.* ¶ 48.) The medical personnel then transferred Plaintiff to a hospital, where he received care for "injuries related to severe pain in his scrotum" and was "given medication for his seizures." (*Id.* ¶ 49.) Upon discharge from the hospital, Plaintiff "was transported to the Paterson Police Department for processing." (*Id.* ¶ 50.)

While incarcerated, Plaintiff sought continued treatment for his injuries, including "the severe pain…in his left testicle." (*Id.* ¶ 51.) He was subsequently diagnosed with "a hydrocele and varicocele of his left testicle, requiring surgical intervention," and was informed that his "injuries will probably cause infertility." (*Id.* ¶¶ 52-53.) At the time he filed his FAC, Plaintiff continued to experience pain resulting from the November 6, 2022 encounter with law enforcement. (*Id.* ¶ 54.)

Plaintiff's prior counsel, Ron Bar Nadav, filed written Notices of Claim upon Defendants on February 2, 2023. (*Id.* ¶¶ 55-57.) On November 1, 2024, Plaintiff filed this suit. (*See* ECF 1.) Three days later, on November 4, 2024, Plaintiff filed the FAC. (*See* ECF 5, FAC) In the FAC, Plaintiff brings claims against all Defendants for Excessive Force under 42 U.S.C. § 1983 ("Section 1983") (Count Three), Denial of Medical Care in violation of the Fourteenth Amendment under Section 1983 (Count Four), Common Law Sexual Assault (Count Five), a *Monell* claim for Deliberately Indifferent Policies, Practices, Customs, Training, and Supervision in violation of the First, Fourth, and Fourteenth Amendments and 42 U.S.C. §§ 1981 and 1983 (Count Six), violations of the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-12(f)(1), and the Equal Protection Clause of the Fourteenth Amendment (Count Seven), Common Law Assault and Battery (Count Eight), Common Law Intentional Affliction of Emotional Distress

(Count Nine), and Common Law Negligence (Count Twelve);[2] claims against all Officer Defendants for False Imprisonment in violation of the Fourth and Fourteenth Amendments (Count One) and Common Law Negligent Infliction of Emotional Distress (Count Ten); and claims against Municipal Defendants for Common Law *Respondeat Superior* (Count Two) and Common Law Negligent Hiring, Supervision, Retention, and Training (Count Eleven). (*See id.*)

Municipal Defendants moved to dismiss Counts Two, Five, Eight, Nine, Ten, and Eleven of the FAC on December 10, 2024. (ECF 6.) Plaintiff filed a brief in opposition to Municipal Defendants' partial motion to dismiss on January 21, 2025. (ECF 17.) Municipal Defendants filed a reply brief in further support of their partial motion on January 27, 2025. (ECF 18.) Officer Defendants moved to dismiss the FAC in its entirety on January 10, 2025. (ECF 12.) Plaintiff filed a brief in opposition to Officer Defendants' motion to dismiss on March 3, 2025. (ECF 27.) Officer Defendants filed a reply brief in further support of their motion on March 20, 2025. (ECF 31.)

## II.    **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has

---

[2] The FAC mislabels the count for Common Law Negligence as the "Thirteenth Count," despite it being the twelfth count of the complaint. (FAC at 38.) For the purposes of this opinion, the Court will refer to this count as "Count Twelve."

acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id*. at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). The court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorably to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, No. 10-02945, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

### III.    ANALYSIS

#### A.  Claims Against the Paterson Police Department

As an initial matter, Plaintiff's claims against the Paterson Police Department cannot be sustained under law. A municipal police department is not a separate entity from the municipality. *Castro v. New Jersey*, 521 F. Supp. 3d 509, 515 n.4 (D.N.J. 2021) ("municipal police departments or departments of public safety are not separate entities from the municipalities"); *see also Buffaloe v. City of Plainfield*, No. 12-03295, 2013 WL 2182327, at *2 (D.N.J. May 20, 2013) (same). Because the Paterson Police Department is not a separate entity from the City of Paterson, Plaintiff's claims against the Paterson Police Department are dismissed.

### B. *Respondeat Superior* (Count Two)

Count Two of the FAC brings a claim against the Municipal Defendants for Common Law *respondeat superior* and alleges that the Municipal Defendants "are liable for the negligent acts and/or omissions of their agent, servant, and/or employee[.]" (FAC ¶ 67.) However, *respondeat superior* is not itself a cause of action nor a standalone claim for which a defendant can be liable. *See Khalil v. City of Paterson*, No. 18-3241, 2018 WL 6168191, at *9 (D.N.J. Nov. 26, 2018) ("To the extent Plaintiff pleads the *respondeat superior* count as a standalone claim . . . there is no such independent cause of action."). Plaintiff's effort to bring a standalone claim for *respondeat superior* therefore fails to state a claim upon which relief can be granted. Defendants' motions to dismiss Count Two of the FAC are granted. Count Two is dismissed with prejudice.

### C. Section 1983 Claims Against Officer Defendants

Plaintiff brings the following Section 1983 claims against all Officer Defendants: false imprisonment (Count One), excessive force (Count Three), denial of medical care (Count Four), violation of the *Monell* doctrine (Count Six), and violation of the Equal Protection clause of the Fourteenth Amendment and the New Jersey Law Against Discrimination (Count Seven). The Officer Defendants argue that Counts One, Three, Four, and Seven should be dismissed because Plaintiff failed to plead facts showing the personal involvement of each officer in the alleged constitutional violations. (ECF 12-1, "Off. Defs." Br." at 7-9.) The Officer Defendants also argue that the *Monell* claim is not applicable as against individual officers and, as such, should be dismissed. (*Id.* at 9.) Plaintiff argues in opposition that the FAC "includes detailed facts with supporting evidence of the incident and the improper conduct of each Defendant." (Off. Opp. at 14.)

In general, 42 U.S.C. § 1983 establishes a cause of action "against any person who, acting under color of state law, deprives another of his or her federal rights." *Wright v. City of Phila.*, 409 F.3d 595, 599 (3d Cir. 2005). To plead a claim under § 1983, a plaintiff must allege "(1) the violation of a right secured by the Constitution or laws of the United States and (2) that the alleged deprivation was committed or caused by a person acting under color of state law." *Roberson v. Borough of Glassboro*, 570 F. Supp. 3d 221, 226 (D.N.J. 2021) (quoting *Lopez-Siguenza v. Roddy*, No. 13-2005, 2014 WL 1298300, at *4 (D.N.J. Mar. 31, 2014)).

The Officer Defendants are correct that Plaintiff must allege facts that, if proven, show each Defendant's personal involvement in the alleged constitutional violations. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005); *see also Galicki v. New Jersey*, No. 14-269, 2015 WL 3970297, at *2 (D.N.J. June 29, 2015) ("[C]onclusory allegations against defendants as a group" are not sufficient to survive a motion to dismiss; rather, a complaint must "establish each individual [d]efendant's liability for the misconduct alleged."). However, the Court disagrees that Plaintiff has failed to allege liability for all Officer Defendants on every Section 1983 claim in the FAC. The Court addresses each claim in turn.

### 1. False Imprisonment (Count One)

Plaintiff's claim for false imprisonment does not survive the Officer Defendants' motion to dismiss because it fails to state a claim and relies on improper group pleading.

To state a claim for false imprisonment, a plaintiff must allege "(1) that [he] was detained; and (2) that the detention was unlawful." *James v. City of Wilkes-Barre*, 700 F.3d 675, 682–83 (3d Cir. 2012) (citing *Wallace v. Kato,* 549 U.S. 384, 389 (2007)). A false imprisonment claim based on an arrest without probable cause is grounded in the Fourth Amendment's guarantee against unreasonable seizures. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995) (citations

omitted). "[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." *Id.* (citing *Thomas v. Kippermann*, 846 F.2d 1009, 1011 (5th Cir. 1988)). A claim under Section 1983 for false imprisonment based on a detention pursuant to an arrest "refers only to the period of incarceration lasting from the moment of arrest until the first legal action, e.g., an arraignment, and the damages recoverable under such claims are limited to those ensuing from the period of detention until the first legal action." *Leith v. Middlesex & Somerset Cnty. Prosecutor's*, No. 15-7227, 2016 WL 3647995, at *8 (D.N.J. July 8, 2016) (citing *Groman*, 47 F.3d at 636; *Connelly v. Wren*, No. 12–2123, 2013 WL 74233, at *4 (D.N.J. Jan. 4, 2013)).

Although "[f]alse arrest and false imprisonment overlap" and "the former is a species of the latter," *Wallace*, 549 U.S. at 389, the two are "still distinct claims." *Jones v. Somerset Cnty. Prosecutor's Off.*, No. 15-2629, 2015 WL 5248573, at *4 (D.N.J. Sept. 9, 2015); *see also Groman*, 47 F.3d at 634-36 (describing the distinct elements of false arrest and false imprisonment claims under Section 1983). While "[t]he basis for false arrest is the arrest itself," the basis for false imprisonment "is the detention that follows the false arrest." *Jones*, 2015 WL 5248573, at *4 (quoting *Reedy v. Twp. of Cranberry*, No. 06-1080, 2007 WL 2318084, at *3 (W.D. Pa. Aug. 9, 2007)). Here, Plaintiff's false imprisonment claim appears based on his arrest, not his detention pursuant to that arrest. Specifically, Plaintiff alleges that Officer Defendants "did not have a reasonable or good faith belief of the existence of probable cause to detain, and did not have probable cause to search [Plaintiff]" (FAC ¶ 59) and that all Officer Defendants "violated Plaintiff's fourth amendment [sic] rights against unlawful search and seizure and caused a deprivation of his liberty." (*Id.* ¶ 60.)

The FAC's description of Plaintiff's arrest is detailed, including the specific Officer Defendants involved (*see* FAC ¶¶ 15-37), but the Court cannot determine which Officer Defendants are allegedly responsible for Plaintiff's detention following his arrest. The FAC does not "'identif[y] discrete defendants and the actions taken by these defendants' in regard to the plaintiff's claim[ ]'" for false imprisonment. *Garrett v. Wexford Health*, 938 F.3d 69, 93 (3d Cir. 2019) (quoting *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019)). Therefore, Count One is dismissed against all Officer Defendants without prejudice.

### 2. Excessive Force (Count Three)

In contrast, Count Three of the FAC, a claim of Excessive Force in violation of Section 1983 (FAC ¶¶ 71-93), both satisfies the particularity requirement of Rule 8(a)(2) and sufficiently shows that Plaintiff has a "'plausible claim for relief'" with respect to certain Defendants. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

The Fourth Amendment prohibits police officers from using excessive force to effectuate an arrest. *See Graham v. Connor*, 490 U.S. 386, 394–95 (1989). Excessive force claims arising in the context of an arrest are analyzed under the Fourth Amendment's "objective reasonableness" standard. *Id.* at 388. In conducting a "reasonableness" inquiry, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (citing *Scott v. United States,* 436 U.S. 128, 137-139 (1978); *Terry v. Ohio*, 392 U.S. 1, 21 (1968)).[3]

---

[3] To determine objective reasonableness, the Third Circuit has instructed district courts to consider "the severity of the crime at issue, whether the suspect[s] pose[ ] an immediate threat to the safety of the officers or others…whether [they are] actively resisting arrest or attempting to evade arrest by flight…physical injury to the plaintiff, the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Rush v. City of Phila.*, 78 F.4th 610, 620 (3d Cir. 2023) (internal citations and quotations omitted).

Plaintiff's allegations that Defendants Rikowich, Davis, Dombayci, and Salameh used excessive force are specific and particularized.  Throughout the FAC, Plaintiff alleges that, after placing him in handcuffs and "violently" throwing him to the ground, Officer Defendants Rikowich, Davis, Dombayci, and Salameh "brutally kicked him, punched him in the face, chest and stomach, [and] slammed his face and head into the ground[.]" (FAC ¶ 32.) Plaintiff also alleges that Defendant Salamah grabbed Plaintiff's scrotum after Plaintiff was restrained. (*Id*. ¶ 35.) Moreover, Plaintiff has alleged that the use of force was unreasonable by claiming that he "follow[ed] the commands of the Defendant officers" during his arrest (*Id*. ¶ 30), yet Rikowich, Davis, Dombayci, and Salameh used force anyway.

In light of the factors that the Third Circuit has instructed district courts to consider, the claims brought by Plaintiff against Defendants Rikowich, Davis, Dombayci, and Salameh are sufficiently particularized to "allow[] the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Fearron v. Restuccia*, No. 20-14819, 2023 WL 2367679, at *7 (D.N.J. Mar. 6, 2023) (finding a plaintiff sufficiently pled excessive force where officers allegedly slammed the plaintiff's face into a wooden post, among other actions). The motion to dismiss Count Three as against Defendants Rikowich, Davis, Dombayci, and Salameh is denied.[4]

Count Three offers only "conclusory allegations" against the other Officer Defendants. *Galicki*, 2015 WL 3970297, at *2. (*See, e.g.*, FAC 80.) Thus, the Officer Defendants' motion to dismiss Count Three of the FAC is granted as to Defendants Assaf, Pimienta, Dicarlo, Qirjako,

---

[4] Defendants' argument that this claim relies on improper group pleading is unavailing where, as here, "[i]t is not 'indecipherable,' when read as a whole, which defendants are responsible for what allegations" in the FAC. *JD Glob. Sales, Inc. v. Jem D Int'l Partners, LP*, No. 21-19943, 2023 WL 4558885, at *8 (D.N.J. July 17, 2023) (quoting *Ojeda v. Louis Berger Grp. (Domestic), Inc.*, No. 18-17233, 2021 WL 941875, at *4 n.9 (D.N.J. Mar. 11, 2021)).

Culmone, Castronova, Hermann, and Melendez. With respect to those Defendants, Count Three is dismissed without prejudice.

### 3. Denial of Medical Care (Count Four)

Likewise, Count Four of the FAC, the Denial of Medical Care under Section 1983, states a claim upon which relief can be granted, but only as to certain Defendants. (*See* FAC ¶¶ 94-102.) "Delaying medical care to an individual in police custody can constitute a constitutional violation under [Section] 1983 only if that delay 'rises to the level of deliberate indifference to that person's serious medical needs.'" *Mantz v. Chain*, 239 F. Supp. 2d 486, 504 (D.N.J. 2002) (citing *Groman*, 47 F.3d at 637). To adequately allege a claim for denial of medical care under Section 1983, plaintiff must allege "(1) that his medical needs were 'objectively serious' and (2) that defendant exhibited 'deliberate indifference' to those needs." *Id.* (citing *Monmouth County Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987)).

The FAC states a cause of action for denial of medical care under Section 1983 only as to Defendants Assaf and Dicarlo. Plaintiff asserts that he notified Defendants Assaf and Dicarlo "of his severe injuries, including aggravation of the wound requiring stitches in his head from recent brain surgery" and "that he suffered from seizures[.]" (*Id.* ¶ 38.) Despite Plaintiff's complaints of "severe and painful injuries," Defendants Assaf and Dicarlo "ignor[ed] [Plaintiff's] requests for a prolonged period of time" and drove away from the scene. (*Id.* ¶ 39.) When Plaintiff suffered from a seizure in the back of the police car (*Id.* ¶ 40), Defendants Assaf and Dicarlo delayed calling for an ambulance and laughed while expressing to Plaintiff that they believed he "was just banging his hard around and[,] since he was not foaming at the mouth, he could not be having a seizure[.]" (*Id.* ¶¶ 42-44, 48.) Plaintiff alleges that Assaf and Dicarlo called an ambulance only "[a]fter a

prolonged period of time" and after Plaintiff "begged" for an ambulance due to his injuries. (*Id.* ¶¶ 41-42.)

Accepting these allegations as true, the Court finds that Plaintiff has successfully pleaded that Defendants Assaf and Dicarlo displayed "deliberate indifference to [Plaintiff's] serious medical needs." *Mantz*, 239 F. Supp. 2d at 504 (internal quotations omitted). As such, Officer Defendants' motion to dismiss Count Four of the FAC against Assaf and Dicarlo is denied. Plaintiff offers only conclusory allegations that the other Officer Defendants exhibited deliberate indifference to his medical needs.[5] (*See generally* FAC.) Therefore, the Officer Defendants' motion to dismiss Count Four is granted as to Defendants Rikowich, Pimienta, Dombayci, Qirjako, Davis, Culmone, Castronova, Salameh, Hermann, and Melendez. With respect to those Defendants, Count Four is dismissed without prejudice.

### 4. Violation of the NJLAD and the Equal Protection Clause (Count Seven)

Plaintiff fails to state a claim for violation of equal protection under the U.S. Constitution pursuant to Section 1983 and a violation of the New Jersey Law Against Discrimination (LAD). As an initial matter, Plaintiff's claim that Defendants violated the equal protection clause and the LAD improperly groups Defendants together. *See Victoria v. Anderson*, No. 23-3765, 2024 WL 772543, at *3 (D.N.J. Feb. 26, 2024) (dismissing the complaint in its entirety because plaintiff failed to "plead specific facts as to each [d]efendant's ... wrongdoing(s)" and instead "ma[de] general allegations against the group").

Plaintiff's equal protection and LAD claims suffer additional deficiencies. To state an equal protection claim under Section 1983, a plaintiff "must allege that a state actor intentionally

---

[5] Although Plaintiff alleges that Officers Castronova, Qirjako, and Pimienta were also on the scene while Plaintiff waited for an ambulance, he alleges that Officers Assaf and Dicarlo had already called an ambulance by the time Castronova, Qirjako, and Pimienta had arrived. (*See* FAC ¶¶ 42-43.) The Court therefore cannot conclude, based on the FAC as pleaded, that these Defendants exhibited deliberate indifference to Plaintiff's medical needs.

discriminated against him because of his membership in a protected class." *Lande v. City of Bethlehem*, 457 F. App'x 188, 192 (3d Cir. 2012) (citing *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009)). The complaint must allege "the existence of purposeful discrimination" by "demonstrat[ing] that [plaintiff] received different treatment from that received by other individuals similarly situated." *Shuman v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005).

Plaintiff alleges that the Officer Defendants beat, sexually assaulted, and arrested him "due solely to the color of his skin, national origin and/or gender, and/or appearance" (FAC ¶ 126.) Although Plaintiff alleges that he is a member of a protected class (*see* FAC ¶ 2), Plaintiff offers only a few conclusory allegations in support of his claim that Defendants stopped, beat and arrested Plaintiff due to his race, national origin, or gender. (*See* FAC ¶¶ 125-26, 132.) As such, Plaintiff's equal protection claim is dismissed without prejudice.

Plaintiff's claim that the Officer Defendants violated the LAD also fails.[6] The LAD provides in part that "[a]ll persons shall have the opportunity . . . to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation . . . without discrimination . . . ." N.J. Stat. Ann. § 10:5-4.[7] Even assuming the Officer Defendants are proper defendants under the LAD, Plaintiff fails to allege with specificity that Defendants' conduct was

---

[6] It is unclear why Plaintiff's LAD claim is combined with his equal protection claim, and the Court analyzes the claims separately.

[7] Courts in New Jersey and this District have come to different conclusions as to whether individual officers are "public accommodations" within the meaning of the LAD. *Compare Ptaszynski v. Uwaveme*, 853 A.2d 288, 347 (N.J. Super. Ct. App. Div. 2004) (holding that both municipal police departments and individual officers are "public accommodations" within the meaning of the LAD); *Jobes v. Moorestown Twp.*, No. 03-4016, 2006 WL 3000444 (D.N.J. Oct. 19, 2006) (same), *with Conserve v. City of Orange Twp.*, No. 21-872, 2021 WL 3486906, at *8 (D.N.J. Aug. 9, 2021) (finding that a police department was not a "public accommodation" where the plaintiffs alleged that police discriminated against them but where they did not call the police and were not transported to a police station.) For purposes of this opinion, the Court assumes the LAD applies, but because the parties have not briefed the issue, the Court does not take a position on it.

due to discrimination based on race, national origin, or gender. *See Morris v. T.D. Bank*, 185 A.3d 215, 221 (N.J. Super. Ct. App. Div. 2018) (dismissing LAD claim at summary judgment). Accordingly, Plaintiff's LAD claim also fails. Count Seven is dismissed without prejudice.

### 5. *Monell* Claim (Count 6)

The Court agrees with the Officer Defendants that Plaintiff's *Monell* claim against individual Officer Defendants fails. (*See* Off. Defs. Br. at 9; Off. Defs. Reply at 11.) Under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), **"[l]ocal governing bodies** . . . can be sued directly under [42 U.S.C.] § 1983 . . . where [an] action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." In addition, **local governments** . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom'. . . ." *Id.* at 690-91 (emphasis added). Because the Officer Defendants are not local governing bodies or governments, they cannot be appropriately sued under *Monell*. Count 6 against the Officer Defendants is dismissed without prejudice.

### D. Section 1983 Claims Against Paterson

The Municipal Defendants move to dismiss Plaintiff's common law claims, but do not move to dismiss Plaintiff's Section 1983 claims against them.[8] (*See generally* Mun. Defs. Br.)

Although Paterson did not move to dismiss Counts Three, Four, and Seven, the Court will *sua sponte* dismiss those counts against Paterson because "a municipality cannot be liable under Section 1983 for the acts of its employees on the basis of *respondeat superior*." *Widmaier v. City*

---

[8] The Section 1983 claims against Paterson are excessive force (Count Three), denial of medical care (Count Four), a *Monell* claim for deliberately indifference policies, practices, customs, training and supervision (Count Six), and violation of the equal protection clause of the Fourteenth Amendment (Count 7).

*of Newark*, No. 16-2533, 2019 WL 1895087, at *4 (D.N.J. Apr. 29, 2019) (citations omitted).[9] Municipal liability is, however, viable under *Monell*. Paterson has not moved to dismiss the *Monell* claim against it (Count Six) and therefore Count Six remains against Paterson.

### E. Common Law Tort Claims Against All Defendants

#### 1. Notice of Claim

Both the Municipal Defendants and Officer Defendants argue that Plaintiff's common law tort claims (Counts 5, 8, 9, 10, 11, and 12) must be dismissed because Plaintiff failed to file a timely notice of claim ("Notice of Claim") as mandated by the New Jersey Tort Claims Act ("NJTCA"). *See* N.J. Stat. Ann. § 59:1-1 *et seq.* (Mun. Defs. Br. at 4-6; Off. Defs. Br. at 4-7.)

Plaintiff's FAC asserts that Plaintiff's prior counsel filed a Notice of Claim upon Defendants "[o]n February 2, 2023, within ninety days of the incident," as required by the NJTCA. (FAC ¶ 55.) Municipal and Officer Defendants dispute this account, alleging that "Plaintiff's Notice of Claim was not filed or otherwise received by the City of Paterson until February 28, 2023" and that Plaintiff's "[f]ailure to comply with this statutory requirement renders the notice of claim defective, barring the claims as a matter of law." (Mun. Defs. Br. at 5; *see also* Off. Defs. Br. at 5-6; Mun. Defs. Reply at 5-7; Off. Defs. Reply at 5.)[10]

As a threshold matter, a party that asserts a tort claim seeking damages from a public entity or public employee must comply with the NJCTA, which "establishes the procedures by which [such] claims may be brought." *D.D. v. Univ. of Med. & Dentistry of N.J.*, 213 N.J. 130, 146

---

[9] A court "may sua sponte dismiss a complaint under Rule 12(b)(6)" after service of process. *Auriemma v. Bloomfield Mun. Ct.*, 841 F. App'x 499, 500 (3d Cir. 2021) (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 111 n.15 (3d Cir. 2002)).

[10] Neither party discusses the notice requirement under the NJCTA for injury resulting from sexual assaults, which was eliminated in 2019. *See J.H. v. Warren Hills Bd. of Educ.*, 336 A.3d 922, 926–27 (N.J. Super. Ct. App. Div. 2025) (citing N.J. Stat. Ann. § 59:8-3(b)). Plaintiff's claim for sexual assault (Count 5) is therefore not subject to the NJCTA notice requirements.

(2013) (quoting *Beauchamp v. Amedio*, 164 N.J. 111, 116 (2000)).  Under the NJCTA, "a timely pre-suit notification about the existence of a claim and its particulars be provided to the defendants."  *Id.*  N.J. Stat. Ann. § 59:8-8 requires that within ninety days of the claim's accrual, an individual file a "notice of claim" with the entity involved in the alleged wrongful act or the New Jersey Attorney General.  "The claimant shall be forever barred from recovering against a public entity or public employee if . . . [t]he claimant failed to file with the public entity within 90 days of accrual of the claim except as otherwise provided in N.J.S.A. 59:8-9."  N.J. Stat. Ann. § 59:8-8.

In support of their argument that the Notice of Claim was not timely filed, Defendants have attached Plaintiff's Notice of Claim and related correspondence to their motions to dismiss (ECF 6-6, Mun. Defs. Br. Ex. 1 ("Notice of Claim"); ECF 6-4, Mun. Defs. Br. Ex. 2 (correspondence from Paterson's third-party administrator to Plaintiff's attorney regarding the Notice of Claim ("Correspondence")); ECF 12-4, Off. Defs. Br. Ex. 1 (Notice of Claim); ECF 12-5, Off. Defs. Br. Ex. 2 (Correspondence).) Plaintiff argues in opposition that by attaching and relying on the Notice of Claim and Correspondence, Defendants' motions rely exclusively on matters outside the pleadings and therefore the Court must either exclude the non-pleadings evidence or convert the motions into motions for summary judgment. (Mun. Opp. at 6-7; Off. Opp. at 7-8.) In reply, Defendants argue that the inclusion of exhibits to their motions does not mandate conversion to a summary judgment motion. (Mun. Defs. Reply at 3-4; Off. Defs. Reply at 3-5.)

In general, "when ruling on a motion to dismiss, a court may not consider matters outside the pleadings." *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 291-92 (D.N.J. 2009). However, a "'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *In re Burlington*

18

*Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). When a court is presented with extrinsic documents that cannot properly be considered on a motion to dismiss, "the Court may of course simply disregard them; otherwise, it 'may either deny the motion or convert it into a motion for summary judgment, providing the parties with a schedule for submission of statements in compliance with Local Civil Rule 56.1, supplemental briefs, and any supplemental evidence they deem necessary.'" *United States v. Est. of Elson*, 421 F. Supp. 3d 1, 5 (D.N.J. 2019) (quoting *Dix v. Total Petrochemicals USA, Inc.*, No. 10-3196, 2011 WL 2474215, at *2 (D.N.J. June 20, 2011)). "The decision whether to convert a motion to dismiss into a summary judgment, however, is a discretionary one." *Id.* (citing *Telfair v. Tandy*, No. 08-731, 2009 WL 2132433, at *3 (D.N.J. July 13, 2009)).

The Court agrees with Defendants that Plaintiff's Notice of Claim attached to Defendants' motions to dismiss is integral to the FAC and therefore can be considered by this Court without converting the motions to dismiss into motions for summary judgment.[11] *See Williams v. Miles*, No. 18-12973, 2020 WL 525926, at *2 (D.N.J. Jan. 31, 2020) (considering an NJTCA notice of claim attached to motion to dismiss as integral to the complaint and declining to convert the motion to dismiss to a motion for summary judgment). Consideration of the Notice of Claim does not, however, mandate dismissal at this juncture. The Notice of Claim is stamped as "received" by Paterson on February 28, 2023 (*see* Mun. Defs. Br. Ex. 1; Off. Defs. Br. Ex. 1), after the expiration of the 90-day requirement for filing, but is dated by Plaintiff's lawyer on February 2, 2023, within

---

[11] Plaintiff also attaches the Notice of Claim and related correspondence (ECF 17-2, Mun. Opp. Ex. B; ECF 17-3, Mun. Opp. Ex. C.) The Court declines to consider Exhibit C to Plaintiff's opposition. That attachment includes "matters outside the pleadings." *Arcand*, 673 F. Supp. 2d at 291-92. The Court also declines to consider at this stage the Correspondence attached as an exhibit to the Defendants' respective motions to dismiss because it is not integral to the FAC, nor is it a public record, as Defendants claim. (*See* Mun. Defs. Reply at 4.)

the 90-day requirement for filing the Notice of Claim.[12] In considering motions to dismiss, the Court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Phillips*, 515 F.3d at 231 (citation omitted). Here, Plaintiff has alleged that his Notice of Claim was filed on February 2, 2023 (FAC ¶ 55) and the Notice of Claim is dated February 2, 2023 by Plaintiff's lawyer. Drawing all reasonable inferences in favor of the Plaintiff, the Court cannot conclude at this stage that Plaintiff's Notice of Claim was late as a matter of law. For this reason, Plaintiff's state common law claims are not barred as a matter of law due to a failure to file a timely notice of claim pursuant to the NJTCA. [13]

The Officer Defendants also argue that the Notice of Claim failed to identify Defendants Assaf, Dicarlo, and Melendez in violation of N.J. Stat. Ann. § 59:8-4. (Off. Defs. Reply at 7-8). Suits against public officers in their official and personal capacities are subject to the notice provisions of the NJCTA. *See Zengotita v. New Jersey*, No. 20-01674, 2022 WL 538531, at *7 (D.N.J. Feb. 23, 2022). Notice "need not specifically name the defendants, so long as it adequately describes them." *Pagan v. Rivera*, No. 19-7176, 2021 WL 5881632, at *4 (D.N.J. Dec. 10, 2021) (collecting cases). Here, Plaintiff's Notice of Claim lists police officers involved in the incident and states that Plaintiff "was assaulted by multiple P.Os [sic] causing severe injury and swelling to both testicles,psychological [sic] psychological [sic] trauma and head injury, wrongful arrest." (Mun. Opp. Ex. B at 2.) The Notice of Claim does not describe officers Assaf, Dicarlo, and Melendez, nor does it indicate the involvement of additional officers other than those listed. *Cf. Est. of Soberal v. City of Jersey City*, 529 F. Supp. 2d 477, 500 (D.N.J. 2007), *order vacated in part*, 334 F. App'x 492 (3d Cir. 2009) (finding tort claim notice that failed to specifically name

---

[12] The parties do not appear to dispute that Plaintiff's claims accrued on November 6, 2022.

[13] Of course, should discovery reveal the factual contentions of the FAC to be erroneous, Defendants may ultimately move for summary judgment on this or any other basis.

two officer defendants adequate where the notice stated that other officers were involved in the incident). For that reason, the Court dismisses the common law tort claims (Counts 5, 8, 9, 10, 11, and 12) against Defendants Assaf, Dicarlo, and Melendez with prejudice for failure to file a Notice of Claim against them.

### 2. Common Law Sexual Assault (Count 5) and Assault and Battery (Count 8)

Plaintiff brings claims against all defendants for common law sexual assault and assault and battery.[14] Plaintiff's claims are dismissed without prejudice as to all Defendants other than Rikowich, Davis, Dombayci, and Salameh.

First, because the Court has already determined that Plaintiff has stated a Section 1983 claim for excessive force against Rikowich, Davis, Dombayci, and Salameh, Plaintiff "ha[s] also stated a viable common law claim of assault and/or battery as against" those Defendants since "both [claims] are predicated on [their] alleged use of excessive force." *Wierzbicki v. City of Jersey City*, No. 19-17721, 2021 WL 4148105, at *9 (D.N.J. Sept. 10, 2021) (quoting *Gaymon v. Esposito*, No. 11-4170, 2013 WL 4446973, at *22 (D.N.J. Aug. 16, 2013)).

Plaintiff fails to state claims for sexual assault, assault, or battery against the other Defendants. In New Jersey, a claim for common-law assault requires: "(1) an action intending to cause a harmful or offensive contact or place a person in imminent apprehension of such contact; and (2) the person is placed in imminent apprehension." *Liu v. Robert Wood Johnson Univ. Hosp. Inc.*, No. 24-8713, 2025 WL 1793787, at *9 (D.N.J. June 30, 2025) (quoting *Bernard v. Cosby*, 648 F. Supp. 3d 558, 574 (D.N.J. 2023)). "[W]ith battery, a plaintiff must allege that there was, in

---

[14] The Court treats Plaintiff's common law sexual assault claim as duplicative of Plaintiff's assault and battery claim and dismisses Count 5 as redundant. *See Vergara v. Keyes*, No. 20-01460, 2020 WL 7778080, at *8 (D.N.J. Dec. 30, 2020) (analyzing claim under standard for common law assault where allegations related to sexual assault and battery); *Bernard v. Cosby*, 648 F. Supp. 3d 558, 574 (D.N.J. 2023) (same); *see also Dougherty v. Drew Univ.*, 534 F. Supp. 3d 363, 384 (D.N.J. 2021) (dismissing redundant claims). Plaintiff may amend the FAC if the law does offer other bases under which the claim is not duplicative. *See Dougherty*, 534 F. Supp. 3d at 384 n.13.

fact, an offensive contact." *Shelley v. Linden High Sch.*, No. 19-20907, 2020 WL 6391191, at *3 (D.N.J. Nov. 2, 2020) (citing *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1117 (N.J. 2009)).

Other than conclusory allegations, Plaintiff has not alleged that any of the other Defendants acted intending to cause a harmful or offensive contact with Plaintiff or an imminent apprehension of such contact, nor has he alleged that any of the other Defendants did contact him. Count 8 as against Paterson, Pimienta, Qirjako, Culmone, Castronova, and Hermann is therefore dismissed without prejudice.[15] Defendants' motions to dismiss Count 8 against Rikowich, Davis, Dombayci, and Salameh are denied. Count 5 is dismissed against all Defendants without prejudice.

### 3. Intentional Infliction of Emotional Distress (Count 9)

"To succeed on a common law cause of action for intentional infliction of emotional distress (IIED)," a plaintiff must show: (1) the "defendant acted intentionally or recklessly," and "intend[ed] both to do the act and to produce emotional distress;" (2) "the defendant's conduct was extreme and outrageous;" (3) "the defendant's conduct was a proximate cause of the plaintiff's emotional distress;" and (4) "[t]he emotional distress suffered by the plaintiff must be so severe that no reasonable person could be expected to endure it." *Eivich v. E. Greenwich Twp.*, No. 20-6851, 2021 WL 856883 (D.N.J. Mar. 5, 2021) (quoting *Ingraham v. Ortho-McNeil Pharm.*, 25 A.3d 1191, 1194-95 (N.J. Super. Ct. App. Div. 2011)). Plaintiff's Complaint "fails to articulate the nature of his 'extreme emotional distress' and how [ ] 'no reasonable person could be expected to endure it.'" *Eivich*, 2021 WL 856883, at *5. Plaintiff alleges only that he "has suffered actual

---

[15] The motions to dismiss are granted as to Paterson because under the NJTCA, public entities are not liable for injuries proximately caused by an act or omission of a public employee where the act or omission of the employee constitutes "a crime, actual fraud, actual malice, or willful misconduct." N.J. Stat. Ann. § 59:2–10. "Assault and battery are torts that require a showing of intentional or willful misconduct. Therefore, the [municipality] is immune from liability for the assault and battery claims." *Hickman v. Borough*, No. 15–3578, 2017 WL 1197806, at *15 (D.N.J. Mar. 31, 2017) (quoting *Sims v. Tropicana Entm't, Inc.*, No. 13–1981, 2016 WL 4801431, at *3 (D.N.J. Sept. 9, 2016)).

physical and emotional injuries" from Defendants' actions. (FAC ¶ 151.) Plaintiff's "conclusory allegation that [Defendants'] actions constituted intentional infliction of emotional distress does not satisfy Rule 8(a) or the *Twombly/Iqbal* pleading requirements." *Eivich*, 2021 WL 856883, at *5. Defendants' motions to dismiss Count 9 are granted and Count 9 is dismissed against all Defendants without prejudice.

### 4. Negligent Infliction of Emotional Distress (Count 10)

Under New Jersey law, the elements of a Negligent Infliction of Emotional Distress (NIED) claim are: (1) the defendant owed plaintiff a reasonably duty of care; (2) a breach of that duty; (3) that the plaintiff suffered severe emotional distress; and (4) that the breach proximately caused the plaintiff's injury. *Walker v. City of Newark*, No. 19-16853, 2020 WL 3542502, at *14 (D.N.J. June 30, 2020) (citing *Russo v. Nagel*, 817 A.2d 426, 435 (N.J. Super. Ct. App. Div. 2003)). Plaintiff asserts an NIED claim against all Defendants but does not specify what duty each Defendant had to Plaintiff; how each breached that duty; or that Plaintiff suffers severe emotional distress as a result of the breach of Defendants' duty. (*See* FAC ¶¶ 154-59.) *See Casciano v. City of Paterson*, No. 19-9475, 2023 WL 5035645, at *8–9 (D.N.J. Aug. 8, 2023) (dismissing NIED claim where the complaint failed to plead a duty and how it was breached). Plaintiff failed to plead the elements of NIED and therefore this claim is dismissed against all Officer Defendants without prejudice.[16]

### 5. Negligent Hiring, Supervision, Retention, and Training (Count 11)

Plaintiff has also failed to plead a claim against the Municipal Defendants for negligent hiring, supervision, retention, or training. To plead a cause of action for negligent hiring, Plaintiff must allege (1) "the employer knew or had reason to know of the particular unfitness,

---

[16] Plaintiff did not bring this claim against the Municipal Defendants. (*See generally* FAC.)

incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons" and (2) the employer's negligence in hiring or supervising the employee resulted in the dangerous attribute proximately causing plaintiff's injury. *Vergara v. Keyes*, No. 20-01460, 2020 WL 7778080, at *11 (D.N.J. Dec. 30, 2020) (quoting *G.A.-H. v. K.G.G.*, 210 A.3d 907, 916 (N.J. 2019)). "To be found liable for negligent supervision or training, the plaintiff must satisfy what is essentially the same standard, but framed in terms of supervision or training." *Id.* (quoting *G.A.-H*, 210 A.3d at 916). The FAC alleges without further detail that the Municipal Defendants "negligently hired, trained, supervised and retained" the Officer Defendants. (FAC ¶ 163.) Such conclusory allegations cannot survive a motion to dismiss. Count 11 is dismissed without prejudice.

### 6. Negligence (Count 12)

Plaintiff's negligence claim is also dismissed for failure to state a claim. "Negligence involves a breach of a duty of care that causes injury." *Brown v. City of Jersey City*, No. CV 22-2792, 2023 WL 5578037, at *6 (D.N.J. Aug. 29, 2023) (quoting *Roccisano v. Township of Franklin*, No. 11-6558, 2013 WL 3654101, at *11 (D.N.J. July 12, 2013)). To succeed on a negligence claim, "a plaintiff must show: (1) a duty of care, (2) a breach of that duty, (3) causation, and (4) actual damages." *Id.* (quoting *Roccisano,* 2013 WL 3654101, at *11). Plaintiff asserts that the Officer Defendants "owed a duty to Plaintiff to perform their police duties without the use of excessive force" and that their "use of force" upon Plaintiff "constitutes negligence." (FAC ¶¶ 168-69.) Plaintiff's negligence claim relies on the Officer Defendants' use of excessive force, but excessive force is an intentional tort. "Courts have repeatedly dismissed negligence claims where the underlying conduct involves an intentional act." *Moran v. Hawthorne Police Dep't*, No. 24-9196, 2025 WL 842315, at *4 (D.N.J. Mar. 18, 2025) (citing *Trafton v. City of Woodbury*, 799 F.

Supp. 2d 417, 444 (D.N.J. 2011)). Because Plaintiff's claim for negligence is based on intentional conduct, it is dismissed.[17]

### IV.    <u>CONCLUSION</u>

For the reasons stated above, the Municipal Defendants' motion to dismiss (ECF 6) is **GRANTED**. The Officer Defendants' motion to dismiss (ECF 12) is **GRANTED IN PART** and **DENIED IN PART**. An appropriate order follows. Plaintiff may file an amended pleading that is consistent with this Opinion within thirty (30) days of the date of the Opinion and accompanying Order.


*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**


Orig:  Clerk
cc:    Leda D. Wettre, U.S.M.J.
       Parties

---

[17] The Court also dismisses this claim against Paterson because under the NJTCA, a public entity is not liable for "an injury resulting from an act or omission of a public employee where the public employee is not liable." N.J. Stat. Ann. § 59:2-2(b).