NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| BENJAMIN JACKSON,<br><br>*Plaintiff*,<br><br>v.<br><br>PATERSON POLICE DEPARTMENT, et al.,<br><br>*Defendants*. | Civil Action No. 24-10215<br><br>**OPINION**<br><br>May 18, 2025 |

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court on Defendant City of Paterson's Motion to Dismiss Plaintiff's Second Amended Complaint (ECF 45, "SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF 51, "Motion" or "Mot.") Plaintiff Benjamin Jackson ("Plaintiff") opposed the Motion. (ECF 55, "Opposition" or "Opp.") The City of Paterson ("Defendant") filed a brief in reply. (ECF 56, "Reply.") The Court reviewed all the submissions and decided the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, the Defendant's Motion is **DENIED** in part and **GRANTED** in part.

I.      **FACTUAL AND PROCEDURAL BACKGROUND[1]**

The following is an edited summary of the factual background of this action previously provided in this Court's September 22, 2025 Opinion granting Defendant's partial motion to dismiss Plaintiff's First Amended Complaint. (ECF 41, "Op.")

---

[1] The Court draws the facts and procedural background from the SAC. The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat*

This action stems from an incident involving Plaintiff Benjamin Jackson, an African American male, and Paterson law enforcement on November 6, 2022. (SAC ¶¶ 1-2.) Between 8:00 p.m. and 9:00 p.m., Defendant Police Officers Dombayci, Rikowich, Salameh, and Davis stopped Plaintiff in Paterson, New Jersey at Broadway and East 18th Streets. (*Id.* ¶ 11.) At the time of the stop, Officers Dombayci, Rikowich, Salameh, and Davis were dressed in plain clothes and wore Body Worn Cameras. (*Id.* ¶¶ 11-12.) Plaintiff asserts that these officers stopped him due to their suspicions of his "fanny pack" and his "startled" reaction to noticing the officers' unmarked vehicle. (*Id.* ¶¶ 13-16.) Officers asked Plaintiff to submit to a search of his person, which Plaintiff declined after asking the basis of the stop and hearing no explanation. (*Id.* ¶¶ 18-19.)

Officers insisted on searching Plaintiff, but Plaintiff objected, told the officers that "New Jersey was not a stop and frisk state," and repeatedly requested that a supervisory officer be summoned to the scene. (*Id.* ¶¶ 20-21.) The officers did not call for a supervisor, detained Plaintiff to conduct a Terry Frisk, and informed Plaintiff that he was not under arrest. (*Id.* ¶¶ 25-26.) Although Plaintiff's "hands were above his head, and on the glass window of a building that he was facing," the officers told Plaintiff that, if he did not comply with their instructions to "put his hands up," they would place him under arrest. (*Id.* ¶ 25.) Plaintiff continued to comply with the officers' instructions and kept his hands above his head against the glass, but the officers placed him under arrest and stated, "all [Plaintiff] was doing was making problems." (*Id.* ¶ 26.)

Upon being placed under arrest, Plaintiff informed the arresting officers that "he had stiches in his head from recent brain surgery and that he suffers from seizures[.]" (*Id.* ¶ 27.) The

*Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). The allegations in the SAC are accepted as true solely for purposes of this Motion, except where conclusory and/or implausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

officers then "violently threw [Plaintiff] to the ground" and repeatedly "brutally kicked him, punched him in the face, chest and stomach, [and] slammed his face and head into the ground" before placing him in handcuffs. (*Id.* ¶ 28.)

While Plaintiff remained handcuffed, Officer Salameh grabbed Plaintiff's scrotum and told Plaintiff "that's for free bro don't even worry about it." (*Id.* ¶ 31.) Plaintiff alleges that the other officers did not stop Officer Salameh from grabbing Plaintiff's genitals but rather were "looking on and laughing[.]" (*Id.* ¶ 32.) While Plaintiff complained to the officers of pain resulting from Officer Salameh grabbing his scrotum, the four officers "berated" Plaintiff and placed him inside a nearby police car. (*Id.* ¶ 33.) Plaintiff again informed the officers that he was injured, the arrest had "aggravate[ed] the wound requiring stitches in his head from recent brain surgery," and "he suffered from seizures as a result of brain surgery[.]" (*Id.* ¶ 34.) Officers Assaf and Dicarlo ignored Plaintiff and drove the police car away from the scene of the arrest with Plaintiff handcuffed in the back seat. (*Id.* ¶ 35.)

While in the police car, Plaintiff experienced a seizure. (*Id.* ¶ 36.) As Plaintiff seized, Officer Assaf stopped the car, allegedly because he believed that Plaintiff "was deliberately banging his head around in the back seat." (*Id.*) After the seizure, Plaintiff became responsive and "begged" the officers to call for an ambulance for "his injuries, including the severe pain in his scrotum," a request that the officers initially did not grant. (*Id.* ¶¶ 37-38.) Eventually, after "a prolonged period of time," the officers called for an ambulance. (*Id.* ¶ 38.)

Before medical personnel arrived to treat Plaintiff's injuries, Officers Castronova, Qirjako, and Pimienta arrived at the scene. (*Id.* ¶ 39.) The officers "stood around" while Plaintiff was laying on the ground next to the parked vehicle. (*Id.*) Plaintiff informed the newly arrived officers and reminded Officers Assaf and Dicarlo that he suffered from seizures. (*Id.* ¶ 40.) Plaintiff

alleges that Officers Assaf and Dicarlo laughed while responding that Plaintiff "was just banging his head around" and "could not be having a seizure" because "he was not foaming at the mouth[.]" (*Id.*)  Plaintiff asked the officers for water, which they did not provide.  (*Id.* ¶ 41.)

Emergency medical personnel arrived at the scene and began to treat Plaintiff for his pain and injuries.  (*Id.* ¶ 42.)  While the officers continued to mock Plaintiff, Plaintiff "told the [e]mergency [m]edical personnel that he had just had a seizure and that one of the Defendant officers grabbed his testicles, and that his testicles hurt[.]"  (*Id.* ¶¶ 42-44)  The medical personnel then transferred Plaintiff to a hospital, where he received care for "injuries related to severe pain in his scrotum" and was "given medication for his seizures."  (*Id.* ¶ 45.)  Upon discharge from the hospital, Plaintiff "was transported to the Paterson Police Department for processing."  (*Id.* ¶ 46.)

While incarcerated, Plaintiff sought continued treatment for his injuries, including "the severe pain … in his left testicle."  (*Id.* ¶ 47.)  He was subsequently diagnosed with "a hydrocele and varicocele of his left testicle, requiring surgical intervention," and was informed that his "injuries will probably cause infertility."  (*Id.* ¶¶ 48-49.)  At the time he filed his SAC on October 22, 2025, Plaintiff continued to experience pain resulting from the November 6, 2022 encounter with law enforcement.  (*Id.* ¶ 50.)

Plaintiff's prior counsel, Ron Bar Nadav, filed written Notices of Claim upon Defendant on February 2, 2023.  (*Id.* ¶¶ 51-53.)  On November 1, 2024, Plaintiff filed this suit.  (ECF 1.)  Three days later, Plaintiff filed his First Amended Complaint ("FAC").  (ECF 5.)  On December 10, 2024, Defendant City of Paterson moved to partially dismiss Plaintiff's FAC.  (ECF 6.)  Defendant moved to dismiss Plaintiff's state law claims but did not move to dismiss Plaintiff's Section 1983 *Monell* claim against it.  (*See generally id.*)  Plaintiff opposed and Defendant replied.  (ECF 17; ECF 18.)  On September 22, 2025, this Court dismissed Plaintiff's state law claims

against Defendant without prejudice and noted that the *Monell* claim against Defendant remained. (Op. at 16-17.)

On October 22, 2025, Plaintiff filed his Second Amended Complaint. (*See generally* SAC.) In the SAC, Plaintiff brings four claims against moving Defendant City of Paterson: deliberately indifferent policies, practices, customs, training and supervision in violation of the First, Fourth, and Fourteenth Amendments and 42 U.S.C. § 1983 ("*Monell* claim") (Count V); discrimination in violation of the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-12(f)(1) (Count VII); assault and battery in violation of the common law (Count VIII); and negligent hiring, supervision, retention, and training in violation of the common law (Count IX). (*Id.*; *see also* Opp. at 1.)

On November 12, 2025, Defendant City of Paterson moved to dismiss Plaintiff's SAC. (*See generally* Mot.)  On December 22, 2025, Plaintiff filed a brief in partial opposition. (*See generally* Opp.)  On December 29, 2025, Defendant filed a reply brief in further support of its Motion. (*See generally* Reply.)

## II.    <u>MOTION TO DISMISS STANDARD</u>

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted."  For a complaint to survive dismissal under the rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678.  Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const.*

*Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).  As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).  Restatements of a claim's elements are legal conclusions, and therefore, not entitled to a presumption of truth.  *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011).  The Court, however, "must accept all of the complaint's well-pleaded facts as true."  *Fowler*, 578 F.3d at 210.  Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action."  *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

## III.    LEGAL ANALYSIS

As a starting point, Counts I, II, III, IV, and VI in Plaintiff's Second Amended Complaint do not assert allegations against the Defendant City of Paterson and are therefore not discussed herein.  (*See generally* SAC; *see also* Opp. at 1.)  Instead, Plaintiff alleges four causes of action against Defendant and opposes Defendant's motion to dismiss Counts V, VII, VIII, and IX.  (*Id.*)

### A. *Monell* Claim (Count V)

Plaintiff brings a *Monell* claim against Defendant for deliberately indifferent policies, practices, customs, training and supervision in violation of the First, Fourth, and Fourteenth Amendments and 42 U.S.C. § 1983.  (SAC ¶¶ 102-14.)

#### 1.    F.R.C.P. 12(g)(2)

As a preliminary matter, Plaintiff argues that Federal Rule of Civil Procedure 12(g)(2) bars Defendant's argument in support of its motion to dismiss Plaintiff's *Monell* claim.  (Opp. at 6-8.)

6

Defendant argues that this Court should consider its Motion because "a district court's decision to consider a successive Rule 12(b)(6) motion to dismiss is usually harmless, even if it technically violates Rule 12(g)(2)." (Reply at 14 (quoting *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 321-22 (3d Cir. 2015)).) The Court agrees with Plaintiff.

Rule 12(g)(2) states that a party "must not make another motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion."[2] Rule 12(g)(2) is a "consolidation rule" that "is intended 'to eliminate unnecessary delay at the pleading stage' by encouraging 'the presentation of an omnibus pre-answer motion in which the defendant advances every available Rule 12 defense' simultaneously rather than 'interposing these defenses and objections in piecemeal fashion.'" *Leyse*, 804 F.3d at 320 (quoting Charles Alan Wright & Arthur R. Miller, 5C Fed. Prac. & Proc. Civ. § 1384 (3d ed. 2014)). When a plaintiff files an amended complaint, a defendant is entitled to raise subsequent defenses and objections that could have been raised previously only if the "amended complaint contains new factual allegations in support of a claim." *Keaton v. Argo Turboserve Corp.*, No. 217CV03978, 2021 WL 3879091, at *3 n.2 (D.N.J. Aug. 31, 2021) (internal citations and quotations omitted). "Essentially, 'Rule 12(g)(2) requires the Court to entertain only those arguments made by Defendants that were not previously available to them.'" *JD Glob. Sales, Inc. v. Jem D Int'l Partners, LP*, No. 21-19943, 2023 WL 4558885, at *9 (D.N.J. July 17, 2023) (quoting *Omodunbi v. Gordin & Berger*, P.C., No. 17-7553, 2021 WL 5277203, *2 (D.N.J. Nov. 12, 2021)).

---

[2] There are exceptions to Rule 12(g)(2)'s procedural bar described in F.R.C.P. 12(h)(2) and (3) that are not applicable in this case. Defendant's Motion is not a motion to dismiss for lack of subject-matter jurisdiction, nor is it a Rule 7(a), Rule 12(c), or trial motion. *See* Fed. R. Civ. P. 12(h)(2) and (3); *see also Rose v. Ferrari N. Am., Inc.*, No. CV 21-20772, 2025 WL 815417, at *15 (D.N.J. Mar. 14, 2025) ("The procedural bar covers all successive motions to dismiss for failure to state a claim and applies with equal force to motions to dismiss an amended complaint." (internal citation omitted)).

Here, Plaintiff pled a *Monell* claim in his First Amended Complaint. (FAC ¶¶ 111-23.) Defendant did not move to dismiss Plaintiff's *Monell* claim in its first motion under Rule 12(b)(6). (*See generally* ECF 6.) This Court subsequently noted in its October 22, 2025 Opinion that: "Municipal liability is . . . viable under *Monell*. Paterson has not moved to dismiss the *Monell* claim against it . . . and therefore [the *Monell* claim] remains against Paterson." (Op. at 17.) Plaintiff continued to plead the same *Monell* claim in his Second Amended Complaint. (SAC ¶¶ 102-114). Plaintiff did not add any new factual allegations that differed from his *Monell* claim in the First Amended Complaint. (*Compare* FAC ¶¶ 111-23, *with* SAC ¶¶ 102-114.) Defendant then moved to dismiss Plaintiff's *Monell* claim for the first time in the current Motion, which is Defendant's second motion under Rule 12(b)(6). (Opp. at 8-9.)

The Court finds that Rule 12(g)(2) bars Defendant's motion to dismiss Plaintiff's *Monell* claim. *See Leyse*, 804 F.3d at 322 n.5 ("[The Third Circuit] emphasize[s] that district courts should enforce Rule 12(g)(2) even if their failure to do so is not a ground for reversal. . . . [S]tringent application of Rule 12(g)(2) may motivate defendants to consolidate their arguments in a single pre-answer motion, especially if they know that the district court will not stay discovery while a post-answer Rule 12(c) motion is pending."). Defendant could have argued in its first Rule 12(b)(6) motion that Plaintiff failed to state a cause of action for *Monell* liability. Because Defendant violates Rule 12(g)(2), Defendant's Motion as to Count V is **DENIED**.[3]

---

[3] Defendant notes that municipalities are immune from punitive damages under 42 U.S.C. § 1983. (Mot. at 15.) Plaintiff does not oppose dismissing his demand for punitive damages against Defendant as to Count V. (Opp. at 1.) Therefore, the Court dismisses Plaintiff's demand for punitive damages in SAC ¶ 114 with prejudice.

### B. New Jersey Law Against Discrimination Claim (Count VII)

Plaintiff brings a public accommodation claim against Defendant under the New Jersey Law Against Discrimination ("LAD"), N.J. Stat. Ann. § 10:5-12(f)(1). (SAC ¶¶ 128-34.) Plaintiff alleges that Defendant, through the Paterson Police Department and its police officers, constitutes a "place of public accommodation" within the meaning of the LAD, and that Defendant Police Officers subjected Plaintiff to "unequal treatment, hostile conduct, and unlawful arrest because he is African American." (*Id.* ¶¶ 129-30.)

The LAD provides in part that "[a]ll persons shall have the opportunity . . . to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation . . . without discrimination . . . ." N.J. Stat. Ann. § 10:5-4.[4] To state a claim under the LAD, a plaintiff must: "(1) demonstrate that he is a member of a protected class; (2) show that the defendant's actions were motivated by discrimination; and (3) demonstrate that others outside the protected class did not suffer similar adverse actions." *Goodelman v. Ticketmaster*, No. CV 24-10980, 2025 WL 2418909, at *2 (D.N.J. Aug. 21, 2025) (internal quotation marks and citation omitted). "'[C]onclusory allegations of discrimination [cannot] satisfy the pleading requirements' for an NJLAD public accommodation claim." *Id.* (quoting *Florentino v. City of Newark*, No. 19-21055, 2020 WL 5105291, at *14 (D.N.J. Aug. 31, 2020)).

---

[4] Courts in New Jersey and this District have come to different conclusions as to whether individual officers are "public accommodations" within the meaning of the LAD. *Compare Ptaszynski v. Uwaveme*, 853 A.2d 288, 347 (N.J. Super. Ct. App. Div. 2004) (holding that both municipal police departments and individual officers are "public accommodations" within the meaning of the LAD); *Jobes v. Moorestown Twp.*, No. 03-4016, 2006 WL 3000444 (D.N.J. Oct. 19, 2006) (same), *with Conserve v. City of Orange Twp.*, No. 21-872, 2021 WL 3486906, at *8 (D.N.J. Aug. 9, 2021) (finding that a police department was not a "public accommodation" where the plaintiffs alleged that police discriminated against them but where they did not call the police and were not transported to a police station). For purposes of this Opinion, the Court assumes the LAD applies, but because the parties continue to not brief the issue, the Court does not take a position on it.

Plaintiff fails to state a claim for violation of the LAD. As an initial matter, Plaintiff did not cure his error of improperly grouping Defendants together. (Op. at 14 (citing *Victoria v. Anderson*, No. 23-3765, 2024 WL 772543, at *3 (D.N.J. Feb. 26, 2024) (dismissing the complaint in its entirety because plaintiff failed to "plead specific facts as to each [d]efendant's ... wrongdoing(s)" and instead "ma[de] general allegations against the group")).) Moreover, Defendant argues, (*see* Mot. at 12-13), and the Court agrees, that Plaintiff continues to offer only conclusory allegations to support his claim that Defendant—through its police officers—stopped, beat, sexually assaulted, and arrested Plaintiff due to his race, national origin, and/or gender. (*See* SAC ¶¶ 130-32.)

The Court has considered whether leave to amend should be granted. *See Free Speech Coal., Inc. v. Att'y Gen. of U.S.*, 677 F.3d 519, 545 (3d Cir. 2012) ("Leave to amend should be freely given when justice so requires, including for a curative amendment unless such an amendment would be inequitable or futile.") Because Plaintiff had an opportunity to amend his complaint after this Court dismissed the LAD claim in his First Amended Complaint without prejudice, (*see* Op. at 15-16.), further amendment of Plaintiff's deficient SAC is futile as to Count VII. Accordingly, Count VII of Plaintiff's SAC as to Defendant is **DISMISSED** with prejudice.

## C. Common Law Tort Claims

As a threshold matter, Defendant continues to argue that Plaintiff's state common law tort claims (Counts VIII and IX) must be dismissed because Plaintiff failed to file a timely notice of claim ("Notice of Claim") as mandated by the New Jersey Tort Claims Act ("NJTCA"), N.J. Stat. Ann. § 59:1-1 *et seq.* (Mot. at 3-6.) Plaintiff's SAC, as did Plaintiff's FAC, asserts that Plaintiff's prior counsel filed a Notice of Claim upon Defendant "[o]n February 2, 2023, within ninety days of the incident," as required by the NJTCA. (SAC ¶ 51; FAC ¶ 55.) Defendant continues to

10

dispute this account, alleging that Plaintiff's "Notice of Claim was not received until February 28, 2023, twenty-four days beyond the statutory deadline" and that Plaintiff's "[f]ailure to file a timely notice 'forever bars' [his] state-law tort claims." (Mot. at 4.)  As Plaintiff points out, (*see* Opp. at 4-6), the Court has already ruled on this issue:

> The Notice of Claim is stamped as 'received' by Paterson on February 28, 2023, after the expiration of the 90-day requirement for filing, but is dated by Plaintiff's lawyer on February 2, 2023, within the 90-day requirement for filing the Notice of Claim.[5]  In considering motions to dismiss, the Court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Phillips*, 515 F.3d at 231 (citation omitted).  Here, Plaintiff has alleged that his Notice of Claim was filed on February 2, 2023 (FAC ¶ 55) and the Notice of Claim is dated February 2, 2023 by Plaintiff's lawyer.  Drawing all reasonable inferences in favor of the Plaintiff, the Court cannot conclude at this stage that Plaintiff's Notice of Claim was late as a matter of law.

(Op. at 19-20.)  The Court adopts its reasoning as outlined in its October 22, 2025 Opinion. (*See id.* at 17-21.)  Accordingly, Plaintiff's state common law tort claims (Counts VIII and IX) are not dismissed on the grounds of the alleged failure to timely file a Notice of Claim pursuant to the NJTCA.  Rather, Counts VIII and IX are dismissed for the reasons stated below.

### 1.  Assault and Battery (Count VIII)

Plaintiff brings a claim against Defendant for common law assault and battery under the theory of *respondeat superior*.  (SAC ¶¶ 135-43.)  Plaintiff asserts that Defendant may be held liable because the police officers' alleged assault and battery of Plaintiff originated in their scope of employment, which includes use of force as police officers.  (Opp. at 12.)  Defendant argues that the NJTCA bars municipal liability for intentional or criminal acts committed by its police officers.  (*See* Mot. at 6-8.)  The Court agrees with Defendant.

---

[5] The parties do not appear to dispute that Plaintiff's claims accrued on November 6, 2022.

Under the NJTCA, "[a] public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances." N.J. Stat. Ann. § 59:2-2. However, public entities are not liable for such injuries where the act or omission of the employee constitutes "a crime, actual fraud, actual malice, or willful misconduct." *Id.* § 59:2-10. The alleged injuries here stem from the alleged assault and battery inflicted upon Plaintiff by police officers. (SAC ¶¶ 136-41.) "Assault and battery are torts that require a showing of intentional or willful misconduct. Therefore, the [municipality] is immune from liability for the assault and battery claims."[6] *Hickman v. Borough*, No. 15-3578, 2017 WL 1197806, at *15 (D.N.J. Mar. 31, 2017) (quoting *Sims v. Tropicana Entm't, Inc.*, No. 13-1981, 2016 WL 4801431, at *3 (D.N.J. Sept. 9, 2016)).

The Court finds that Defendant cannot be held liable for the alleged intentional tort of assault and battery under a theory of *respondeat superior*. That the public employees in this case are police officers who are expected to use appropriate force in certain situations does not alter the outcome. *See id.* (finding that the defendant municipality "could not, as a matter of law, be held liable under a theory of respondeat superior" where a police officer committed an intentional tort of assault and battery); *see also Davis v. Devereux Found.*, 209 N.J. 269, 303 (2012) ("When the employee's crime is serious, it is in nature different from what servants in a lawful occupation are expected to do." (internal quotation marks and citation omitted)).

---

[6] In New Jersey, a claim for common-law assault requires: "(1) an action intending to cause a harmful or offensive contact or place a person in imminent apprehension of such contact; and (2) the person is placed in imminent apprehension." *Liu v. Robert Wood Johnson Univ. Hosp. Inc.*, No. 24-8713, 2025 WL 1793787, at *9 (D.N.J. June 30, 2025) (quoting *Bernard v. Cosby*, 648 F. Supp. 3d 558, 574 (D.N.J. 2023)). "[W]ith battery, a plaintiff must allege that there was, in fact, an offensive contact." *Shelley v. Linden High Sch.*, No. 19-20907, 2020 WL 6391191, at *3 (D.N.J. Nov. 2, 2020) (citing *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1117 (N.J. 2009)).

Plaintiff has failed to state a claim for assault and battery against Defendant. Because Plaintiff had an opportunity to amend his complaint after the Court dismissed this claim without prejudice on September 22, 2025, (*see* Op. at 21-22), further amendment of Plaintiff's deficient SAC is futile as to Count VIII. Accordingly, Count VIII of Plaintiff's SAC as to Defendant is **DISMISSED** with prejudice.

### 2. Negligence (Count IX)

Plaintiff brings a claim against Defendant for negligent hiring, supervision, retention, and training of its police officers. (SAC ¶¶ 144-53.) Plaintiff alleges that Defendant was aware of recurring excessive force issues within its police department and failed to implement measures to ensure that the police officers involved in this case were properly hired, trained, and supervised. (Opp. at 12.) Defendant argues that Plaintiff does not assert facts specific to the police officers involved that raise a reasonable inference of negligence. (Reply at 8.) The Court agrees with Defendant.

To plead a cause of action for negligent hiring, Plaintiff must allege (1) "the employer knew or had reason to know of the *particular unfitness, incompetence or dangerous attributes of the employee* and could reasonably have foreseen that such qualities created a risk of harm to other persons" and (2) the employer's negligence in hiring or supervising the employee resulted in the dangerous attribute proximately causing plaintiff's injury. *Vergara v. Keyes*, No. 20-01460, 2020 WL 7778080, at *11 (D.N.J. Dec. 30, 2020) (emphasis added) (quoting *G.A.-H. v. K.G.G.*, 210 A.3d 907, 916 (N.J. 2019)). "To be found liable for negligent supervision or training, the plaintiff must satisfy what is essentially the same standard, but framed in terms of supervision or training." *Id.* (quoting *G.A.-H*, 210 A.3d at 916).

The Court finds that Plaintiff fails to allege any facts specific to the Defendant Police Officers' "particular unfitness, incompetence or dangerous attributes" that allegedly resulted in Defendant's negligence. *Id.* Rather, Plaintiff merely offers conclusionary allegations that Defendant Police Officers "were unfit for their jobs." (SAC ¶ 150.) Such allegations are counter to what is required by *Twombly* and *Iqbal* and cannot survive a motion to dismiss.

Plaintiff has failed to plead a claim against Defendant for negligent hiring, supervision, retention, or training. Because Plaintiff had an opportunity to amend his complaint after the Court dismissed this claim without prejudice on September 22, 2025, (*see* Op. at 23-24), further amendment of Plaintiff's deficient SAC is futile as to Count IX. Accordingly, Count IX of Plaintiff's SAC as to Defendant is **DISMISSED** with prejudice.

## IV.    CONCLUSION

For the reasons stated above, Defendant City of Patterson's Motion to Dismiss Plaintiff's Second Amended Complaint (ECF 51) is **DENIED** in part and **GRANTED** in part. Count V remains against Defendant. Counts VII, VIII, and IX as to Defendant are **DISMISSED** with prejudice. An appropriate order follows. Plaintiff may file an amended pleading that is consistent with this Opinion within thirty (30) days of the date of the Opinion and accompanying Order.

> /s/ Jamel K. Semper
> **HON. JAMEL K. SEMPER**
> **United States District Judge**

Orig:  Clerk
cc:    Leda D. Wettre, U.S.M.J.
       Parties

14